IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID RUDOLPH DUNCAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 08-5363 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                              DATE:   May 13, 2009
UNITED STATES MAGISTRATE JUDGE

David Rudolph Duncan ("Duncan") brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB").  He has filed a Request for Review to which the Commissioner has responded.  For the reasons that follow, I recommend that Duncan's Request for Review be remanded for consideration of the testimony of the third-party lay witnesses.

I.     Factual and Procedural Background

Duncan was born on December 17, 1966.  Record at 72.  He obtained a GED.  Record at 98.  He then worked for approximately twenty years as a plumber.  Record at 103.  On August 11, 2004, Duncan fell off a ladder at work and injured his right wrist and back.  Record at 33-34.  He has not worked since that date.  Id.

On January 12, 2006, Duncan filed an application for Social Security benefits.  Record at 72.  In it, he alleged disability since August 11, 2004, as a result of an anxiety disorder, asthma, high blood pressure, high triglycerides, high cholesterol, diabetes and pancreatitis.  Record at 92.  His initial application was denied by the state agency on June 5, 2006.  Record at 60.

Duncan then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). The hearing was held on October 18, 2007. Record at 29. At the hearing, the ALJ heard testimony from Duncan, his fiancee, his mother, and a vocational expert ("VE"). The ALJ denied benefits in a decision dated November 8, 2007. Record at 18. The Appeals Council denied Duncan's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 5. Duncan then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (I) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do

>not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.   <u>The ALJ's Decision, and Duncan's Request for Review</u>

In his decision, the ALJ determined that Duncan suffered from the severe impairments of asthma, obesity, degenerative disc disease involving the lumbar spine, and an anxiety disorder. Record at 20. He found, nevertheless, that Duncan retained the RFC to engage in work at the medium exertionary level, which was simple and routine, and where he would have no more than limited contact with the general public. Record at 20-21.

Relying on the testimony of the VE, the ALJ decided that, while Duncan could not return to plumbing, which is heavy work, he could work as a hand packer, vehicle cleaner, or bagger. Record at 23. He concluded, therefore, that Duncan was not disabled.

In his Request for Review, however, Duncan maintains that the ALJ erred in (a) improperly rejecting the reports of his treating physicians for both his physical and his mental impairments; (b) failing to incorporate all of the limitations he found into his hypothetical question to the vocational expert; and (c) failing to consider the testimony of his wife and mother.

IV.     Discussion

A.      Duncan's Treating Physicians

Duncan argues that the ALJ wrongly discounted the opinions of Samir Farag, M.D., his treating psychiatrist, and Paul Doghramji, M.D., his general practitioner. A review of the ALJ's decision, however, and the relevant evidence, shows that the ALJ simply found this evidence less credible than substantial evidence from other sources.

1.      Dr. Farag

The ALJ did not mention Dr. Farag by name. However, he wrote:

> The Administrative Law Judge is ... unpersuaded by the opinion expressed on a Medical Source Statement by claimant's therapist at the Penn Psychiatric Center that claimant has little or no ability to function in social and occupational settings. The probative value of this opinion is diminished by the fact that it was based on only a few therapy sessions and that it is also inconsistent with GAF scores of 60-65.

Record at 22.

Duncan makes much of the fact that the ALJ wrongly attributed the September 17, 2007, Medical Source Statement solely to "claimant's therapist", who was Kelly Hunsicker, M.S.W., without acknowledging that it was co-authored by Dr. Farag, a psychiatrist, and that it relied not only upon therapy sessions, but also upon Dr. Farag's assessment of Duncan. Duncan writes that: "the ALJ rejected Dr. Farag's opinion based on [this] mistake of fact."

On the contrary, however, the GAF score of 60-65, which the ALJ cites, was located in Dr. Farag's report. Obviously, the ALJ did consider the material provided by Dr. Farag. He apparently found it striking that, three months after Duncan was assigned this high GAF score (a GAF score of 61-70 indicates "mild" symptoms, so a 60 score is the highest possible score in the

"moderate" range), he was found by the same source to have "poor to no ability" in five of eight categories relating to making occupational adjustments, and in three of four categories relating to making personal/social adjustments. Record at 410, 411, 424. The fact that Dr. Farag is a psychiatrist and not a "therapist" does not eliminate this discrepancy.

The ALJ was also accurate in noting that Duncan's treating mental health practitioner had only known him for three months at the time the Medical Source Statement was completed. This, of course, was just as true of Dr. Farag as it was of Ms. Hunsicker. Before this, Duncan had never received mental health treatment, although he had been prescribed anti-anxiety medicine by his general practitioner. Record at 349-350.

Crucially, there was other substantial medical evidence in the file upon which the ALJ was entitled to rely. Mark Greenberg, Ph.D., an independent examining psychologist, met with Duncan on April 25, 2006. Record at 349. He described Duncan's history of panic attacks, and diagnosed him with a panic disorder, a major depressive disorder, and an obsessive-compulsive disorder. Record at 349-350. In a Medical Source statement, Dr. Greenberg indicated that Duncan had many limitations, but most were checked off as "moderate" and a few as "slight." Record at 355. None were "marked" or "extreme." Id. All the limitations were attributed to Duncan's panic attacks. Id.

On May 24, 2006, a consulting agency psychologist, Roger Fretz, Ph.D., completed an RFC evaluation, based on his review of Dr. Greenberg's report, and the other medical records. Record at 379. He agreed that Duncan suffered from a major depressive disorder and an anxiety-related disorder. Record at 360, 362. He indicated, however, that Duncan was only moderately limited in his abilities to: maintain attention and concentration for extended periods; complete a

5

normal workday or workweek without interruptions from his psychologically based symptoms; interact appropriately with the general public; and travel in unfamiliar places or use public transportation. Record at 370-371. He was not otherwise limited. Id.

In a narrative report accompanying his RFC assessment, Dr. Fretz wrote:

> The claimant's basic memory processes are intact. He is able to carry out very short and simple instructions. He would be able to maintain regular attendance and be punctual. He would not require special supervision in order to sustain a work routine. Moreover, he experiences social anxiety and discomfort around strangers. He has a history of frequent panic attacks. However, he can exercise appropriate judgment in the workplace. In spite of some difficulty with concentration and task persistence, the claimant retains the ability to understand, retain and follow job instructions. There are few restrictions in his abilities in regards to understanding and memory.

Record at 372. He concluded: "The claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." Record at 373.

It is apparent, therefore, that the ALJ did not improperly disregard the evidence provided by Dr. Farag. He evaluated it, but found the RFC assessment inconsistent with the other treatment notes and evidence from other psychologists.

2.   Dr. Doghramji

Dr. Paul Doghramji, Duncan's treating general practitioner, completed medical source statements on September 20, 2007, relating to both Duncan's mental and physical impairments. As to Duncan's mental health, Dr. Doghramji checked off "poor/none" on questions about Duncan's ability to use judgment in public, interact with supervisors, deal with work stresses, function independently, remember and carry out complex job instructions, and behave in an emotionally stable manner. Record at 440-441. In all other areas, his ability was "fair." Id.

6

The ALJ simply said that he rejected this assessment "for all the forementioned reasons." Record at 22. Duncan argues that this impermissibly leaves the ALJ's rejection of Dr. Doghramji's assessment unexplained. See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (an ALJ "cannot reject evidence for no reason or the wrong reason"). However, the statement is in the same paragraph as the ALJ's explanation of his rejection of the treating psychologists' RFC assessment. It is clear that the ALJ rejected Dr. Doghramji's mental assessment because it was inconsistent with Duncan's treatment records, and with the reports of Drs. Greenberg and Fretz. The ALJ may also have been influenced by the fact that, unlike the other opining doctors, Dr. Doghramji is not a mental health specialist. 20 CFR § 404.1527(d)(2)(ii) and (d)(5).

In his assessment of Duncan's back impairment, Dr. Doghramji indicated that Duncan could never lift any weight, and could stand or walk only a few minutes at a time, several times a day. Record at 436. He indicated that Duncan could sit for a "few hours" in an 8-hour day, and that he needed to shift position and get up. Record at 437. He could never climb, stoop, kneel, balance, crouch, crawl, push or pull. Id.

The ALJ wrote that "the clinical evidence of record does not support such extreme functional limitations." Record at 22. On the previous page, the ALJ had written:

> On physical examination, claimant's gait is non-antalgic and he is able to squat and walk on his toes and heels. Straight leg raising tests are negative. Examination of the lumbar spine shows signs of tenderness without muscle spasm. The claimant is neurologically intact and has full range of motion of the lumbar spine.

Record at 21.

The ALJ was correct in his assessment of the medical record pertaining to Duncan's back injury. A September 24, 2004, MRI showed central canal stenosis at L4-L5, with bulging of the

disc and foraminal narrowing. Record at 214. Nevertheless, five months after his August 11, 2004, injury, Duncan was found by Kinematic Consultants, Inc., to be capable of medium-to-heavy work. Record at 221.

Between January 28, 2005, and September 23, 2005, Duncan was examined on five occasions by an orthopedist at the Comprehensive Diagnostic Center. Record at 300-308. He consistently reported lower back pain. However, his physical examinations always showed no neurological deficit, good reflexes, normal straight-leg testing (indicating a lack of pain from a herniated disc), and a normal heel-toe gait. Id.

Natu Patel, M.D., a state medical consultant examined Duncan on March 8, 2006. Record at 345. Dr. Patel described a normal physical examination, with normal "flexion and extension of LS-spine." Record at 347. Dr. Patel did not even diagnose Duncan with a back impairment. Id.

Based on Dr. Patel's examination, and on the other medical records, a state medical consultant concluded in a May 31, 2006, Physical RFC assessment form that Duncan could lift 50 pounds occasionally, and 25 pounds frequently, and that he could stand, walk or sit about 6 hours (each) in an 8-hour work day. Record at 375.

Clearly, the ALJ was correct in concluding that the medical record did not support the extreme physical limitations Dr. Doghramji found. Indeed, Dr. Doghramji's findings even exceed Duncan's allegations of limitation. Duncan testified that he was still able to do some gardening, and that he could take walks of up to half an hour at a time. Record at 35.

In summary, the ALJ's treatment of the evidence supplied by Drs. Farag and Doghramji was well-supported by substantial evidence, and adequately explained.

    C.    <u>The Hypothetical Questions Posed to the VE</u>

Duncan maintains that the ALJ erred in failing to include certain of the limitations found by Dr. Greenberg in the hypothetical questions he posed to the VE. A hypothetical question to a VE which omits an impairment supported by the record is faulty, and the answer to such a question is not substantial evidence. <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 554 (3d Cir. 2005).

Duncan argues that, since the ALJ credited Dr. Greenberg's report, he should have included in his questions to the VE the limitations in the ability to interact with co-workers and supervisors, and in the ability to respond appropriately to work pressures or changes in a routine work setting, which Dr. Greenberg found. Instead, the ALJ asked the VE for jobs requiring "no detailed instructions, limited contact with public." Record at 53.

This argument is meritless. An ALJ must include in his hypothetical questions every impairment supported by the record, but he is not required to quote every phrase supporting the existence of the impairment. A brief, commonly-used catchphrase, such as a limitation to "simple, routine work" is not always sufficient to address a claimant's specific mental-health limitations. See <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d Cir. 2004). Here, however, the limitations included by the ALJ in his hypothetical questions adequately address Duncan's mental health condition, as determined by the ALJ.

As noted below, however, I recommend remand for the explicit consideration by the ALJ of the testimony of the third-party lay witnesses. The ALJ may need to pose new questions to a VE if his decision as to the extent or nature of Duncan's limitations changes as a result of his consideration of this testimony.

C.       The Testimony of Duncan's Fiancee and Mother

Despite the foregoing, I recommend that the matter be remanded for specific consideration of the testimony of Duncan's mother and his fiancee. Both of these witnesses testified that Duncan's mental limitations were extreme. Duncan's fiancee stated:

> It's gotten out of control the past couple of years where he doesn't move, doesn't go anywhere, doesn't see anybody. I have to take my two kids over to my mother because I'm afraid he'll go into a panic attack while I'm at work, so he can't watch them. ... He doesn't go anywhere. I have to do everything.

Record at 45.

Duncan's fiancee also testified that Duncan did not drive himself to doctors' appointments because he was afraid he would have a panic attack in the car. Record at 47. Similarly, Duncan's mother testified that her son did not drive long distances, and that she took him to his medical appointments. Record at 49.

The ALJ did not mention the testimony of the lay witnesses at all, and did not even note that they had testified. Duncan is correct in arguing that this was erroneous, under Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2000). In that case, the Court of Appeals for the Third Circuit focused on the fact that an ALJ's failure to discuss the evidence presented to him rendered his decision un-reviewable.

Among other errors, the Burnett ALJ had failed to mention the testimony of the claimant's husband and of her neighbor. Id. at 122. The Burnett court found that this required remand. Id. It wrote: "Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him", citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983).

The Court of Appeals in Burnett specifically explained that the mere fact that the lay evidence was cumulative was insufficient to prevent remand:

> On appeal, the Commissioner contends the ALJ did not need to mention their testimony because it "added nothing more than stating [Burnett's] testimony was truthful." This argument lacks merit because the ALJ made a credibility determination regarding Burnett, and these witnesses were there to bolster her credibility.

220 F.3d at 122.

Here, the Commissioner has similarly argued that remand is not necessary because the lay witnesses' testimony was only cumulative, and would not have changed the result in the case. As in Burnett, however, the argument lacks merit, because the function of this "cumulative" evidence was to support the credibility of Duncan's testimony. Indeed, all supportive testimony is likely to be cumulative, since the same limitations will be reported over and over; that is exactly where its value lies.

To assume that this type of cumulative lay testimony could not change the outcome in a case is to say: "The ALJ has already made up his mind – he certainly won't let additional *evidence* stand in his way." This would be contrary not only to Third Circuit law, but also to 20 CFR § 404.1527(c)(3) which assures a claimant that the ALJ will consider "all of the evidence presented", including lay testimony from "other persons."

Other cases in this circuit applying Burnett have used a harmless error analysis to decide that remand was not necessary where an ALJ failed to discuss third-party lay testimony. DeStefano v. Astrue, Civ. A. No. 07-3750, 2009 WL 113744 at *10 (E.D. Pa. Jan. 14, 2009); Carnes v. Commissioner, Civ. A. No. 08-99, 2008 WL 4810771 at *5 (W.D. Pa. Nov. 4, 2008); Combs v. Barnhart, Civ. A. No. 03-5526, 2005 WL 1995457 at *1-2 (E.D. Pa. Aug. 16, 2005).

However, a harmless-error review requires case-by-case analysis; it does not permit lay testimony to be routinely ignored whenever contrary evidence exists.

In the cases cited above, moreover, there were other reasons why remand was not needed. In DeStefano, the court noted that the lay evidence did not entirely support the claimant. 2009 WL 113744 at *10.  In Carnes, the District Court felt sure that the ALJ had reviewed the testimony of the claimant's mother, since he specifically acknowledged it, even though he did not discuss it.  2008 WL 4810771 at *5.  In Combs, the ALJ had discussed the testimony of the claimant's wife in the two earlier decisions he had issued, following two earlier hearings: the wife did not testify at the third hearing which preceded the third ALJ decision. 2005 WL 1995457 at *2.  Nothing like this is present here.  Accordingly, on these particular facts, I recommend reconsideration for explicit discussion of the testimony of the two lay witnesses.

V.	Conclusion

In accordance with the above discussion, I make the following

**R E C O M M E N D A T I O N**

AND NOW, this   13ᵗʰ    day of May, 2009,  it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be GRANTED IN PART and DENIED IN PART and the matter remanded for specific consideration by the ALJ of the testimony of the claimant's mother and his fiancee.

BY THE COURT:

/s/Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID RUDOLPH DUNCAN              :       CIVIL ACTION
                                  :
    v.                            :
                                  :
MICHAEL J. ASTRUE,                :
Commissioner of Social Security   :       NO. 08-5363

O R D E R

JOHN P. FULLAM, J.

     AND NOW, this      day of                , 2009, upon consideration of the Plaintiff's Request for Review and the Defendant's response thereto, and after careful review of the Report and Recommendation of United States Magistrate Jacob P. Hart, IT IS ORDERED that:

     1. The Claimant's Request for Review is GRANTED IN PART and DENIED IN PART; and

     2. The matter shall be remanded for specific consideration by the ALJ of the testimony of the claimant's mother and his fiancee.

BY THE COURT:

_____
JOHN P. FULLAM, J.